# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
       **Plaintiff,**

  v.                                             **Case No. 06-CR-218**

**MATTHEW VERBOS**
       **Defendant.**

## SENTENCING MEMORANDUM

Defendant Matthew Verbos pleaded guilty to conspiracy to distribute 500 grams or more of cocaine, contrary to 21 U.S.C. §§ 841(a)(1) & (b)(1)(B). The charge arose out of defendant's assistance to Todd Hendricks, a large-scale Milwaukee area cocaine dealer.

The probation office prepared a pre-sentence report ("PSR"), which set defendant's offense level at 23 (base level 28, U.S.S.G. § 2D1.1(c)(6), minus 2 under the safety valve provision, § 2D1.1(b)(9), and minus 3 for acceptance of responsibility, § 3E1.1) and his criminal history category at I, producing an imprisonment range of 46-57 months under the advisory sentencing guidelines. The government moved for a sentence reduction under U.S.S.G. § 5K1.1 to reward defendant for his cooperation, and upon consideration of the motion and the factors set forth in 18 U.S.C. § 3553(a), I imposed a sentence of 15 months. This memorandum sets forth the reasons for the sentence imposed.

## I. SENTENCING PROCEDURE

In imposing sentence, I follow a three-step procedure. First, I determine the advisory sentencing guideline range, resolving any factual disputes necessary to that determination. Second, I decide whether to grant any departures pursuant to the Sentencing Commission's

policy statements. Finally, I select a sentence that is sufficient but not greater than necessary given all of the factors set forth in 18 U.S.C. § 3553(a). E.g., United States v. Cull, 446 F. Supp. 2d 961, 962 (E.D. Wis. 2006).

## II. DISCUSSION

Neither side disputed the guideline calculations in the PSR, so I proceeded to consideration of the government's departure motion.

### A. Departure Motion Under § 5K1.1

The government moved for a sentence reduction under U.S.S.G. § 5K1.1 based on defendant's substantial assistance in the prosecution of others. In ruling on such a motion, I consider:

> (1) . . . the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;
>
> (2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;
>
> (3) the nature and extent of the defendant's assistance;
>
> (4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;
>
> (5) the timeliness of the defendant's assistance.

U.S.S.G. § 5K1.1(a).

I give substantial weight to the government's evaluation of the extent of the defendant's assistance, but the extent of the departure is within my discretion. In attempting to quantify the departure, I typically grant something on the order of a 2-level adjustment for each factor found to be fully present, with a lesser reduction for those factors partially present. United States v. Matthews, 463 F. Supp. 2d 916, 918 (E.D. Wis. 2006).

2

According to the motion, defendant de-briefed, which led to co-defendant Hendricks's decision to plead guilty to drug conspiracy and 18 U.S.C. § 924(c) charges. Defendant's de-briefing also allowed the government to more accurately assess relevant conduct for Hendricks, which would otherwise have been lower. The government requested a 30% reduction in the guidelines based on this assistance.

Under the first § 5K1.1 factor, I awarded 1 level because the government believed that defendant's assistance was significant in getting Hendricks to plead, although it had sufficient information from other sources to get a conviction with or without defendant's help. Under the second factor, I awarded 1 level because the government indicated that defendant's information was truthful and complete, but I did not award a greater reduction because there was no evidence that defendant's information was relied upon, in obtaining warrants for example. I awarded 1 level under the third factor because the cooperation was generally limited to de-briefing. Defendant did also attempt to locate an address for the government, but he did not engage in significant pro-active cooperation, by making buys or wearing a wire for instance. Under the fourth factor, I awarded 1 level based on risk. Hendricks associated with a violent crowd, as evidenced by the fact that Hendricks possessed numerous firearms at his residence and had previously been shot as a result of his dealing. Finally, I awarded 1 level under the fifth factor based on the government's assertion that defendant's assistance was timely; because there was no evidence as to the significance of the timeliness, I did not award a greater reduction.

Therefore, the total reduction was 5 levels, making the range 27-33 months. I proceeded then to imposition of sentence under § 3553(a).

3

**B.     Section 3553(a)**

In imposing sentence, the court must consider the factors set forth in § 3553(a), which include:

(1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)    the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)    the kinds of sentences available;

(4)    the advisory guideline range;

(5)    any pertinent policy statements issued by the Sentencing Commission;

(6)    the need to avoid unwarranted sentence disparities; and

(7)    the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). The statute directs the court, after considering these factors, to impose a sentence that is sufficient but not greater than necessary to satisfy the purposes of sentencing set forth in sub-section (2).

**1.     Nature of Offense**

Defendant, a drug user, began obtaining cocaine from Hendricks in 2005. He subsequently began helping Hendricks with his operation, making deliveries and storing drugs. Defendant was compensated in cocaine rather than being paid for his services, and Hendricks

4

described defendant as his helper. Although Hendricks was found to have several guns after his arrest, there was no evidence that defendant possessed a weapon or engaged in any sort of violence or threats. However, defendant was certainly close enough to the operation to know of its unsavory character.

### 2. Defendant's Character and Background

Defendant was thirty-two years old, and while he had done a lot of positive things in his life, his drug use really brought him down. Defendant graduated high school and served in the military from 1994 to 1999, then worked at SBC from 1999 until 2006 when he lost his job due to drug use and attendance problems. As noted, defendant got involved with Hendricks in 2005, and because cocaine was so available, his occasional use escalated to daily use. Not only did he lose his job, he lost custody of his young son. His wife, with whom he used drugs, was at the time of sentencing in a rehabilitation facility herself. Defendant had two children from a previous relationship, and his drug use caused their mother to cut off his access to them. She later told the PSR writer that she was learning to trust defendant again.

Defendant had taken significant steps to restore the lost trust and defeat his drug addiction. In the summer of 2006, after a family intervention, he decided to stop using and went to live with his aunt in Eagle River, Wisconsin in order to clean up. He had abstained from illegal drug use ever since, and his family noticed a great change in him. I received numerous letters from family members attesting to the transformation. His aunt, with whom he stayed in Eagle River, stated that his illegal activities were the direct result of his drug abuse, and that he was now clean. His grandmother indicated that prior to his drug use defendant was helpful to her, and that he was now back to his old self. His brother wrote that defendant had always been there for him and had made great progress in overcoming his

5

problems. Defendant's mother wrote of their struggles to help defendant get clean. Since his return to the Milwaukee area, defendant had been employed at Mayfair Mall, and his supervisor also wrote a positive letter.

I was concerned about defendant's continued use of alcohol. He was arrested for drunk driving in November 2006, and that case was pending at the time of sentencing. Defendant's prior record was clearly substance abuse related: drunk driving cases, a possession case while he was in the army, and an obstructing charge for giving a false name after a traffic stop. However, defendant had also taken steps to deal with his drinking problem, commencing treatment at Genesis after his November arrest and maintaining sobriety for the following four months.

### 3.     Purposes of Sentencing

Given his history, I believed that, if he stayed sober, defendant was not a risk of recidivism. However, there was a need for some period of confinement to promote respect for the law and deter others, given the damage drug trafficking causes to the community. It appeared that Hendricks's was a fairly aggravated operation, given the amounts and the weapons involved, and the violence that surrounded it. Defendant had significant treatment needs, as discussed above.

### 4.     Guidelines

The guidelines called for a term of 27-33 months, after the departure. Under all of the circumstances, I found this range somewhat greater than necessary to satisfy the purposes of sentencing. First, defendant's involvement in the conspiracy stemmed from his own addiction. He was not a substantial dealer in his own right, but rather became involved with Hendricks in

6

order to obtain cocaine. He was compensated in cocaine rather than cash, and his role was to help Hendricks. Thus, given the impetus for his involvement and the nature of his specific role in the offense, I concluded that a term below the range would be sufficient to provide just punishment. See 18 U.S.C. § 3553(a)(2)(A).

Second, defendant had taken significant steps to deal with his drug problem. With the help of his family, he had been drug free for about nine months, and he was entitled to some sentencing consideration for that. With drugs out of his life, he was much less likely to re-offend, making the guideline term greater than necessary to protect the public. See 18 U.S.C. § 3553(a)(2)(C). His strong family support would also help in that regard.

### III. CONCLUSION

Under all of the circumstances, I found a sentence of 15 months sufficient but not greater than necessary. This sentence took into account the reasons for defendant's involvement in illegal activity, the nature of his specific conduct, and the steps he had taken to address his drug addiction, while still providing just punishment. Because he had never before been to prison, this sentence was also sufficient to deter defendant from re-offending. See 18 U.S.C. § 3553(a)(2)(B). Because the sentence was supported by the particular facts of the case and tied to the § 3553(a) factors, it did not create unwarranted disparity. See 18 U.S.C. § 3553(a)(6).

Therefore, I committed defendant to the custody of the Bureau of Prisons for 15 months, followed by five years of supervised release. I selected the high end of the term recommended by the guidelines to ensure that defendant's treatment needs were addressed and that he did not re-offend. As conditions, I ordered that he undergo drug testing and treatment, and avoid taverns or other establishments were alcohol was the principal item of sale. Other terms of the

7

sentence appear in the judgment.

Dated at Milwaukee, Wisconsin, this 2nd day of April, 2007.

/s Lynn Adelman

_____
LYNN ADELMAN
District Judge